Good morning, Counsel. Good morning, Your Honors. And may it please the Court, Jeremy Friedman for Relator and Appellant. With me at Counsel's Table is Michael Wilson, who's my co-counsel, as well as Shawna Itchley for Amicus. The principal question to be presented, oh, and I'd like to reserve three minutes for my rebuttal. All right. The principal question presented is, was the issue, was the fraud at issue in this litigation previously exposed in the May 31, 2011 New York Times article? Why just that article? There were several New York Times articles. There were seven, but there were... Several. I don't know if there were seven, but there were several. I do think you seem to be focusing on one of them. So, am I missing something? Why that one? That's the one where they supposedly disclosed the compensation arrangements with family members. I've read all of them. I'm sure we all have. So, I'm just trying to figure out why you think it is meaningfully different. It's meaningfully different because all of them deal with direct payments, whether or not there are improper direct payments going to Biotronik. That's the only one that dealt with family payments. This case... Nepotistic hiring practices. Yes. I'm not trying to take a lot of your time. It's a simple question. Yes. That's the only one. That's the only issue because that's what is remaining in the Sam Jones complaint. After we dismissed count five voluntarily because of the settlement in the Bell case, the only claims presented currently and before the court are the family payments. I know that. I'm just trying to figure out, of the New York Times articles, do you think there's only one that talks about nepotistic hiring practices?  Thank you. That's all I needed. I'm sorry. I wasn't more direct on that. To trigger the bar under Metesky and Silversher, there has to be either an explicit statement of wrongdoing or facts from which fraud could be inferred. Everyone agrees that there is no explicit allegation of fraud in the New York Times article and infer from those facts that there occurred a transaction of fraud that was substantially the same as the alleged fraud here. Or in the words of the court and Silversher, did the New York Times article expose the material elements of the allegedly fraudulent scheme? And you would go claim by claim, defendant by defendant. I'd like to deal with the two... Could I interrupt you? Because you don't have a lot of time. And we've read lots of cases in case law. And I'm trying to get at, I think we understand what the question is, and we're trying to tease out how similar does it have to be, right? How similar does it have to be? Because Congress has directed that we strike this balance. And in its most recent statutory iteration, I think it was restricting this bar, trying to pull it back a bit. And yet, there's still definitely concern about parasitic suits. So we're trying to figure out how to strike that balance. I don't know that... So first of all, if the New York Times article or articles is enough to knock out this case, why not Bell? Why wouldn't it... Why wouldn't it have knocked out Bell? That's exactly right, Your Honor. If there was... Was it raised in Bell? Pardon? It wasn't a rhetorical question. Was it raised in Bell? Bell was settled, yes? Bell was settled. And if the New York Times article and the Sampth litigation had acted as a bar on Bell, Bell never would have brought... Right. So I'm just... To kind of move this along, was it raised in Bell? It was... Not that we know of, Your Honor, because it was settled. Yes. Okay. And that's the problem, I think, with several of these. Is the difference... Relatedly, I'm trying to figure out why Sant wouldn't knock out this case of public disclosure bar-wise. And I think the answer is that Sant didn't include... I don't know if I'm pronouncing that correctly, but I don't know if it included any allegations of nepotistic hiring practices. Sant had one line in it... One sentence, I think. There was no identification of anybody who had entered into a compensation arrangement. But perhaps most important, there wasn't a statement that there was an unlawful compensation arrangement. Okay. Well, it doesn't seem to take a lot of imagination after one reads the New York Times articles. So I'm just going to ask you this hypothetical, and if you can... I always try to get lawyers to divorce themselves from the facts of their cases, and they almost never can, or never want to. But it's not intended to be a trick question, and I'm going to ask the other team the same thing. Which is, I'm looking for case law, and it seems it ought to be out there, where we're talking not necessarily about... Like in Metesky, where there's an ongoing problem that's been reported by the government accounting offices, and then the question was whether this complaint, which added significantly more detail, was different enough to withstand the bar. This seems to be a circumstance where, if you look at all the articles, all the New York Times articles, the general scheme, that's my word, involving Biotonic, had been reported out. And in fact, it's been sued on several times. But with one exception that I'm going to ask about in a minute. But for purposes of this question, what I don't see is case law that talks about other iterations of the same scheme, particularly separated by number of years. Is there a case law like that? There are case law that says that if you're talking about a past scheme, does that raise the bar to future schemes? Does that mean the bar lasts forever? The Booker case, Booker versus Pfizer, which is 9F sub, we cited in our reply brief at page 11. Do you think that's the one that comes closest? That's one of the best. There's also the one from this court in the Ninth Circuit, Shahinian versus Kimberly-Clark, that's cited in the opening brief at 50. I think the concept really is settled in the law that we sue fraudsters for what they did in the past, not what they did in the future. And we hope that if we hold them accountable for what they did in the past, that they'll change their ways. But if they don't change... That argument works pretty well where there's a separation. And here I think you have six years between the initial, at least between the New York Times articles and your 2017 complaint. Not only that, Your Honor, and I don't want to go back to the facts if you want me to deal only with the hypothetical, but in the New York Times article itself, there's no disclosure that there was unlawful compensation arrangements. Okay, but that's the part where I said I don't think it takes a whole lot of imagination, or at least for purposes of this hypothetical. And my problem with... Again, so now you're down to three minutes, so I'm trying to talk quickly. But my problem is that the way you're defining the bar, I'm not sure there ever is a bar. And we're trying to strike a balance here, so where would you draw the line here? There most definitely is a bar. Where would you draw the line? Where would we draw the line? There would have to be a disclosure of the identity of the parties, and there would have to be a disclosure of a statement to the government in connection with the claim for payment. That's not in the article. And there would have to be a statement of the facts in the article showing an unlawful compensation arrangement. So that's not good enough, because Biotronic is... That's the same general allegation, that Biotronic is using this scheme to funnel... These are my words, and they're not very good ones. I don't mean to impugn... These are allegations only, that Biotronic was funneling kickbacks to doctors for using their medical device. And the Stark claim. And Biotronic is named throughout these. But that's why I say different iteration, different hospitals, different surgeons. Is that enough? And if so, what's the case law that most closely suggests that it is enough? There has to be a naming of the other two defendants. So they're out for sure. I know you keep asserting that. Can you just tell me what is the case law that goes there for you, sir? What supports that? There's Alcan, this court case in 1999. There's Cooper, perhaps that's the best. Cooper in the 11th Circuit in 1994. And In Re Natural Gas, the 10th Circuit in 2009. All of those cases are cited on our briefs. But there has to... That the identity of the party is an essential element. And if you don't name the party, then you have to say specific facts where that party is identifiable. Of course, opposing counsel is going to get up and say they've been named. Biotronic's been named. Biotronic has been named. So if the other allegations are sufficient for Biotronic, Sam Jones's claim would be barred, unless he's an original source. But the claims against the other two defendants would not be. And the reason why the claims against Biotronic are not named is because there's no disclosure of an unlawful compensation arrangement. Nepotistic hiring is not what our case is about. It's about nepotistic hiring when the compensation varies with the number of orders. So that's my last question for you, if I could interrupt you. Forgive me for interrupting. But I don't see any other complaint, and this is for the other lawyers too. I don't see any other complaint or newspaper article that talked about a three-way hiring scheme. There are hospitals allegedly doing this or participating in knowingly submitting false claims in order to, I'll say, keep happy a physician who's a very large billing center. There's not only a no disclosure of... That was a question. There's no... That was a question. Was that disclosed anywhere? No. The three-way. The three-way is not disclosed anywhere in the article. That was my question. And if I'd like to... A very important point I'd like to read from page 319 of the excerpts of record in volume 3, where it says specifically in the New York Times article, Biotronic and its consultants have not been accused of any wrongdoing. And Mr. Myers said the company... That's the attorney for Biotronic, said the company had abided by all federal regulations. So what makes it unlawful is not whether they hire a brother or a son. That's not the point. The point is that they hire one and then the compensation arrangement is unlawful because it doesn't fit within the stark exceptions or the AKS safe harbors. All right, Counselor, you've exceeded your time. We'll give you one minute for rebuttal. Okay. Thank you. Good morning, Your Honors. Shauna Itchery from Zero Ice. My firm, along with the Anti-Fraud Coalition, filed an amicus in this case. I've been generously granted five minutes. I want to make one point. There is no requirement in the original source exception to the public disclosure bar that a relator have knowledge prior to the public disclosure. Why... How do we get around Meyer? And so we said in Meyer that that is the case. Now, were we just talking about the facts that were before the court in Meyer? We... How do we distinguish Meyer? This is your... Meyer... A relator has independent knowledge when he knows about the allegations before the information is publicly disclosed. Is that a... a what? Is that a holding that we're bound by, I guess, is the question. So in the text of the statute, the statute was amended in 2010 to make two definitions of the original source. In the 2009 Meyer is the pre-2010 amendment where there was not two definitions of the original source. In that definition, it talks about direct and independent knowledge based on the information that was publicly disclosed. In Meyer, what the court ended up saying that they claimed... the relator claimed their original source, but it wasn't direct and independent knowledge because the independent knowledge came from a third party. I think your point is well taken, that it's not a temporal requirement, that it's parallel, right? And I think your point is well taken. Somebody's made it in the briefing somewhere. There's a lot of briefing. That if there had been an independently discovered conduct, that just because there was a filing or disclosure, you know, on a parallel track, that wouldn't knock out a claim, wouldn't disqualify an original source. Yes, Your Honor. Right. But in this case, there's an allegation in the complaint that in response to the Bell settlement... That's what the opposing party has argued, that it was in response to the Bell settlement that really started Sam Jones on this journey. What about that? Yes, Your Honor. Sam Jones, there's two relators. They were both former employees of the company. They did an independent investigation. But they did an independent investigation and they have alleged that they did that because of Bell, that that brought this to their attention. Independent, Your Honor, is from a different source other than the public disclosure. And that knowledge came independently from the relators from their investigation. They included about... It reads like the investigation verified their suspicion and that their suspicion was based upon Bell. I don't read it that way, but even if it does, their investigation is an independent source. Their information did not come from the public disclosure. It did not come from the Sont case. It did not come from the New York Times article. It came from their own experiences. They went through their complaint, substantially adds to the public disclosure. They added about 600, almost 700 invoices from Dr. Goodman, one of the defendants in the case, showing that he was paid money for referrals, paid money for surgically implanting electronics devices. It talks about the compensation arrangements in detail and that the sales rep's compensation depended on the value and volume of referrals. It talks about 11 other relationships. I love that. I guess that's helpful in terms of pinning down the complaint. I guess I have a, just to back up here, I have a question that doesn't seem to be sorted out well in the briefs. 3734A says, the court shall dismiss an action or a claim. We're dealing with a motion to dismiss on a complaint. I take it the New York Times article is somehow incorporated but how do you view the standard that it takes to establish? Is this an affirmative defense that the complaint has to plead itself into? What are we supposed to do? What's the universe of things that we are allowed to consider under the public disclosure bar outside of the complaint? Outside of the complaint? I don't think, I'm sorry, I don't completely understand Your Honor's question. Can you please? Well, this is a motion to dismiss and the public disclosure bar reads as an affirmative defense but it also says the court shall dismiss an action. And so I'm just trying to figure out what record do we have before us to work through here? Usually we just have to look at the face of the complaint. There's judicial notice of the New York Times article but what else is there? In other words, typically in an affirmative defense we'd have to find that the complaint itself establishes the affirmative defense. I'm just wondering whether you have any experiences like what are we supposed to do with respect to the statute vis-a-vis the 12B issue? So in the district court's opinion, I think he took judicial notice of the one May 31st argument saying this was the most relevant. And I think in the footnote one he said, we don't need to take judicial notice of the other articles. So we're stuck with that or whatever else we've noticed? We're stuck with the New York Times article. And then you look at, are the allegations in the complaint substantially similar to whatever the transactions disclosed in the New York Times article? And I would say that they are not substantially similar. They're very, very different. There are specific facts like Metesky that are alleged in the complaint that was not set forth within the New York Times article. Thank you. All right, counsel, thank you. You've exceeded your time. Thank you. Good morning. Good morning. Your honors, may it please the court. I'm Megan Mocho. I'm representing Biotronic in this case. Counsel, could you put the mic a little closer? I'm having some difficulty hearing you. Apologies, your honor. I have a little voice. That's all right. I'll speak up. I agree with your honors that there have been two disclosures that triggered the public disclosure bar in this case. The series of New York Times articles, there were five in total, the last of which does make explicit reference to the nepotism carrying an issue here. But going back to Judge Johnstone's question, that's something I think we're grappling with. Did the district court take judicial notice of more than one of them? It did not take judicial notice of more than one of them. However, implicit in the district court's decision is the idea that he took the entire context of the articles in the case. So could you answer, what do you think is properly before this court in response to Judge Johnstone's question? This court, they have taken judicial notice of the New York Times article, the last of the five. But even if we are to focus only on the last of that five, that article in and of itself provides sufficient inference abroad. There is a discussion about the improper, and it uses the term illegally promoted sales. But somewhere, somehow. That's the difficulty. I think if I agree with you that it is an article that doesn't leave a lot to imagination about an inference of fraud, but it's at a hospital with different physicians at a different time years earlier, it can't be the rule that once something like that, a fraudulent scheme is disclosed, that years later, separated temporally and geographically, that there would be no incentive for a whistleblower to come forward and report that fraud. Your Honor, and I think that the case that is cited by the relators talks to that point, the Kimberly-Clark case. But in that case, there was a different product, a different process, and a different, a different issue with the products, as opposed to here, we're talking about the exact same products, and we are talking about the same time period. So if this, just to try to figure out how to, we should draw the line here. If the New York Times article said that the, to borrow Judge Christen's term, the scheme, was happening in Florida and not in California, barred? I would argue no. Well, what good does California, this is a pretty big state. I apologize. So, Your Honor, if we look at the Alcom case, they talk about being able to define a narrow subset of defendants. Here, there is a narrow subset of defendants. Nepotistic hiring, you have individuals who work for Biotronic, and doctors who implant the Biotronic devices. Well, that's the what. And I guess, you know, this XYZ is really focused just on the what. It doesn't get to the who or the where. And so when you're saying that there is, this scheme is happening with Biotronic in California, that could be a universe of, I don't know, hundreds of hospitals, thousands of surgeons. How on earth can the False Claims Act do its work with that broad a universe barred by public disclosure? Sure, so the Department of Justice is charged with investigating every single False Claims Act that gets put in. The Department of Justice is woefully underfunded and under-resourced, and Congress knows that. And this is a statute that works by providing this incentive. So it can't be the case that once a scheme, that's my word, is disclosed, that then it's fair game. If it is a different and new scheme, Your Honor, I would agree with you, but this is the exact same scheme. But wait a minute, if we define this scheme as Biotronic paying kickbacks to doctors to implant, to use their device, yes. But that's why I'm trying to get both of you to focus, and so far I'm pretty much striking out, on the notion that isn't there case law then that suggests, or should there be, that suggests that if that same scheme is repeated in different places around the country, and this one's separated temporally as well as geographically, isn't that sufficiently dissimilar? But it's not separated, Your Honor, because if you look at the relator's complaint, the original complaint, it is nearly verbatim, as all of the other disclosures, and whether they trigger the bar or not. It is six, one was Nevada, one is California, and there is six years apart. So here's what I'm struggling with. If we were to do what you want us to do, which is to affirm on this record, then it seems to be that there could be the very same scheme, Biotronic paying kickbacks to physicians to implant this same device, and that that could be repeated over and over. So Whistleblower wouldn't be able to say 10 years later, 15 years later, hey, they're doing it again. I think that's the way you would have us read this rule. I would not have you read the rule that way, Your Honor. They have alleged from 2008 forward, they have alleged that this is the exact same scheme as previously disclosed. If you look at their original complaint and their current complaint, the second amendment complaint, it's 2008 forward. So it's not as if a practice started and stopped, and now they're doing it again. But you're asking us to affirm the dismissal of years and years of conduct since the last settlement or complaint or disclosure. That has been brought in the public disclosure, consistent with the public disclosure by recognizing the underfunding of the Department of Justice. We don't need these duplicative opportunistic suits. Well, it's what's duplicative. I guess the problem is, I guess I come back to the game of Clue, and we have a wrench, a scheme, some ML here. But it's Colonel Mustard in one, and it's in the lounge or the kitchen in the other. How is that enough to establish the scheme? And I guess to pick up on a question that Judge Christin had asked your friend, do we have, most of these cases involve the fraudster and the victim, it's bilateral. You've just got those two. It's the government, and then it's, most of these cases are someone misleading the government. But we've got two intermediaries here who are the co-defendants, and this would be a question for them too. And I wasn't able to find any cases that suggested the public disclosure bar should apply to those when you have those intermediaries as well. It's different parties to the fraud. So I'll take your questions twofold, your Honor. So if we look to the Ampistar and the Alcan case and the Solis case, the False Claims Act, or even claims to the government, do not need to be alleged. Whether you're alleging there's a Stark violation or a kickback violation, at its core, the allegation is that there was an improper inducement provided to the doctors, one way or another, to secure these implants. So we submit that it's the exact same scheme. And if you look at the A1 case, the A1 ambulance case that is cited, the court there said that just because you recognize a new novel legal theory does not mean that we, that you're not a defendant. But it's not quite a novel, I think your point's well taken about that. It's not just a new theory. But I do think this may be the only complaint that alleged a three-way scheme. I don't know if they can prove it. But I think the allegation fairly read. The second, certainly the Second Amendment complaint alleges that the hospital was also in on it, and knowingly submitting false claims in order to basically to, make sure that they retain physicians who are doing a really big book of business. Sure, can I answer your question quickly, and then Judge Johnstone's quickly, I've noticed I'm a little late. You'll have time. Thank you so much. These are the same claims. These are the same. Oh, so I just asked a question, mine was, is there another allegation of a three-way scheme? There's not, but my point is that there is, these are the exact same claims. There's not one claim. But there's not another allegation of a three-way claim and they're the exact same? Sorry, claim, invoice, as it's used under the First Amendment. Oh, I see. You mean claims submitted to the government. Correct. But the statute is looking, it's not substantially the same claims is what the statute asks. It's substantially the same transactions. And when there are different parties, why isn't that a different transaction? So the Supreme Court has recognized in the Schindler case that the transactions is a very broad term and it's intended to encompass a number of business dealings between the parties. And the broad scope of the public disclosure bar is intended to protect the government from these unnecessary suits. Your question earlier, Your Honor, about, you'll have to forgive me, I'll come back to it. But the ability to wrap up whatever legal theory is being put out, if you look at all of these complaints, there are multiple legal theories that are all geared at the exact same claim, invoice, that is being submitted to the government. And they do that in order to preserve one way or another. Even if there is a completely different, I mean, I guess, depending on what you're saying with the legal theory. So if there is a different, not just if, and I'll take Biotron, you'll take your client out of it. If the alleged fraudster is not just, even if they're working with the same people, if they're different, they can just change, vary the claims that they're making a little bit, change the device, for example, and I guess I'm trying to figure out what could possibly not be barred by an article of this scope under your theory. I go back to the idea. So in Metesky, we hear about the concern that if we read it too broadly, if there's a generalized allegation against an industry, that we won't be able to really drill down on who the alleged wrongdoers are. But here, Biotronic is the primary focal point of a spoke, and you have very defined individuals, implanting physicians and the hospital. Not in the disclosure, that's the problem. You don't have defined individuals in the disclosure. But it is, pursuant to Alkin, it is a narrow class of individuals. So the spoke and wheel example is exactly what I'm trying to get at. Is there a case law that goes to that, where there's one actor in the middle of this wheel, but there are different, and I keep saying different iterations of the scheme, different physicians, different hospitals. What case law goes to that to say that the public disclosure bar sweeps in each of those iterations? That would be the Alkin case. So in the Alkin case, you had two lines in a complaint that alleged that local contractors were withholding union dues from the paychecks of union members. And those local contractors were performing on federal contracts. And only one of the several defendants in that case was named as a defendant in the False Claims Act case, or excuse me, in the prior case. And the others had not been named. And the court still said that the public disclosure applied in that instance, because again, it is an identifiable group of individuals consistent with the alleged scheme. Can you, I'm sorry, I'm searching for, just give us a quick site to that case. Absolutely, Your Honor. I see, it's the 99 case. Yes. 197F3D1014. I see I'm woefully over time, but I did want to make a very quick point about the temporal analysis, if you'll indulge me. Please. I did wanna point out that it is not just the Meyer case, Your Honor, that cites to the temporal analysis requirement. Meyer and Alkin were probably the most direct, but you can also look at the Wank case out of this circuit, the Amphistar case out of this circuit, even the Rockwell case out of the Supreme Court. If you look at that case, the question as to whether or not the relator had sufficient knowledge in 1982 relative to the 1988 disclosure, that temporal assessment is inherent in the analysis. All right, thank you, Kelsey. Any other questions? All right, thank you, counsel.  Good morning. Good morning, Your Honor. Gary Friedberg for Dr. Goodman. I'd like to go straight to the issue that was raised about Dr. Goodman not being identified in the article. And I think there are three reasons why the public disclosure bar still applies to Dr. Goodman, one based on the statutory language, one based on the case law, and one based on the practical objectives of the statute. The statutory language at issue is transactions or allegations. If the transactions or allegations are substantially the same, then the public disclosure bar applies. So that would then mean if it was someone other than Biotronic engaged in this scheme that the public disclosure law would apply, right? If it doesn't matter to parties? Except that, well, I think the question then would be, is it the same transaction? In this case, the district court focused on the fact that Biotronic was the main actor in the scheme as part of its determination that it's the same transaction. And I think that also gets to some of the other elements that I mentioned, such as the purpose of the statute. Once you have Biotronic, it's a simple matter to send a civil investigative demand asking Biotronic who does it employ as a sales representative that has a family member who's an implanting physician and to provide the records related to that physician. I appreciate the practicality of the response. Where would we find that grounded in our cases in terms of the actual functioning? And I think you've heard concerns from us that we wanna fulfill the purposes here. Where would we land that concern that if it's sufficient to support a government investigation, then the public disclosure bars? So there are cases which discuss that the disclosure should be sufficient to put the government on the trail to investigate the fraud. Not that it needs to disclose the fraud in its entirety. Was there any recent case law, pre-amendment case law that says that? I believe that that's also in post-amendment case law. I can try to find it. Thank you. Let me ask you this. What is the timeframe spanned by the allegations against your client? 2009 is when it began. And so the allegation is 2009 forward? 2009 to I think 2017. I'd have to double check the last date. I think that's right, okay. I think the time and the geographical location are factors that a court can consider in determining whether the nature and degree of the harm is sufficiently similar to meet the substantial similarity test. And what was the determining factor to the court here is that there were very specific allegations of a nepotistic hiring arrangement with physicians who were responsible for selecting the devices. And because of that high level of overlap between the nature and kind of the fraud, the court determined that the substantial similarity test was met. I don't believe that that's error. Is there any case that involves an allegation that a hospital knowingly participated? I do not recall that case. I believe the indirect compensation arrangement was included in an attempt to allege a Stark Act violation. The fundamental false claim is an allegedly false certification that the law had been complied with when in fact there are allegations of fraud financial, improper financial incentives or illegal marketing practices as the article says. Well, the government's on, sufficiently on notice from the article that there was fraud. And if the government chooses to pursue the fraud, the government can readily do so. That way you think we ought to draw the line that if the government's on notice, then the bar applies? Well, first I think the bar applies only if the plaintiff is not an original source, only if the government does not oppose the dismissal and only if the government does not intervene. So it's a relatively small class of cases. In those cases, I believe the test is if the nature and kind of fraud alleged is sufficiently similar, substantially the same as the public disclosure, then the fraud applies. And in determining whether the substantial similarity test is met, I believe the court should look as the district court did into whether the court can, the government can readily investigate and identify the responsible individual. So you think that's just one factor? Whether the government is aware and has enough information to follow up is one factor is what you're telling me? Yes, I think it's actually a critical factor. I read Silberscher as basically coming down on the relator side because the articles would not have alerted or the prior disclosures, which I think were patent applications. What do we do about Metesky, for example, then Metesky, that's our binding precedent. And it specifically talks about where the relator has added additional detail, helpful detail. It's not hard to read this complaint as adding or this proposed complaint as adding additional helpful detail because it identifies other hospitals and other actors. What should we make of that? So the Metesky case says that the public disclosure did not contain an explicit allegation of wrongdoing. It described delays and incompetence, not deception. Right, it even talks about maybe it was just describing a breach of contract as opposed to fraud. Correct, correct. This case, it's impossible to read the 2011 article without understanding there's a strong specter of fraud. And since the main actor in the fraud is identified and the precise relationships that that actor had with its own employees is identified, it's a very easy step for the government, if it chooses to investigate it, to determine who those salesmen were, who their family members were, and how many implants those family members were responsible for. In fact- All right, counsel, you've exceeded your time. Pardon me. Are there any other questions? All right, if you could wrap up, counsel. No, well, so I just want to note in final that the alternative approach of requiring every individual to be identified, first of all, I agree with counsel that that's contrary to the Alcon case. Three other cases that we cited on that regard were North Star, which was a government action case using the transaction and allegation case, Finley v. FPC Boron, and Fine, which I believe was a 10th Circuit case. All right, thank you, counsel. Thank you. I understand you're arguing it. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Paul Regali of Larson LLP on behalf of Cedars-Sinai. Your Honor, you've heard a lot about the public disclosure bar this morning. If you have any additional questions, I'd be happy to answer them. But in the meantime, what I'd like to do is draw some attention to the alleged unlawful three-way compensation scheme that the relator would rely on in order to get over the public disclosure bar, if Your Honor were to accept their state of the law with respect to what that bar is. The next stop would probably be the government action bar or one of the other defenses that District Court didn't reach yet, right? Correct. There would be the government action bar, the failure for them to be an original source, which I think we've covered very clearly in the briefing. There was no disclosure to the government by the relator. And then, as we've pointed out in the briefs by all of the defendants, there were multiple independent reasons from which the District Court could have properly dismissed this case. And I think one of them is the failure to sufficiently allege the unlawful three-way compensation scheme that they would bootstrap their public disclosure kind of argument on. There are not any specific nine-B particular allegations that adequately explain a three-way compensation structure that is significantly different than what was alleged in the articles. I don't know. This would be helpful to me. I think the gist of it is that there were certain physicians that might have been viewed as profit centers. And I don't mean to disparage anybody by using this shorthand. But I think that type of scheme where the hospital, the allegation, only an allegation, that the hospital knew about, perhaps, that a certain physician who was doing a whole lot of billing in a very profitable area had switched, abruptly, to a different manufacturer of a different device, and the hospital continued on without, I think, the allegation from you would be that the hospital had no idea, right? But, of course, we're not getting to any ruling about whether they can prove any of this. But I think the allegation generously construed would be that the hospital was part of this three-way arrangement to keep the doctors happy. Your Honor, my response to that would be that there's no allegations in the complaint other than motive by the hospital to suggest that that three-way compensation scheme existed. What the plaintiff has alleged, and in particular with respect to the hospital, is that Dr. Goodman has rights to perform procedures at the hospital, that Dr. Goodman then has a right to select devices off an approved list of devices that are provided by the hospital. The hospital will provide post-operative care to a patient, and then the hospital will provide certain billing practices. The hospital, for example, would get paid the same amount of money, whether biotonic or cedar. If you could focus on the allegation, which is that it does allege that he was also, in the case of Dr. Goodman, billing a very large volume, a very large volume. So I think the gist of it is, not, I don't wanna, gist on the allegations of the complaint, I think the gist of it is the idea that the hospital was complicit in knowingly submitting these bills, even though there was perhaps improper, I'll say kickbacks, to use the slang, compensation being funneled to physicians or their family members. I don't think that allegation, this allegation of a three-way, unproven, totally get that it's unproven, I don't think that allegation is the same as the type of fraudulent scheme that is alleged in the New York Times article. And my response to that, Your Honor, would be to the extent that that is what plaintiff is arguing in order to overcome, to differentiate itself from the New York Times article, that there are insufficient factual allegations to survive 9B with respect to that fraud scheme. And we went over this, it's page 34 through 34 of our brief, Your Honor, and we addressed it significantly. And in one of the earlier, I think it was the first amended complaint, for example, Cedars-Sinai was only mentioned fewer than a half dozen times in the complaint. There's no facts alleged about any coordination between Dr. Goodman, his brother, the representatives of the hospital, there's no representatives of the hospital identified. There's no alleged correspondence between Biotronic and Cedars-Sinai with respect to implementing this scheme. And so we would argue, Your Honor, that if that is the theory that counsel is going to use or the relator is going to use to differentiate itself from the sources that would be the public disclosure bar that they haven't met their 9B standard and that they can't on that basis. I understand your response now much better than I did earlier. Although I think it might be in your brief, but I didn't understand it to responding to this point. So thank you. All right, counsel, you've exceeded your time. Are there any other questions? Please wrap up. I have nothing further at this time. All right, thank you, counsel. Actually, I take that back. One thing I would note, just to clarify some earlier points made, is that Silbersher did not change the inquiry with respect to the prior disclosure bar after the 2010 amendment. It's the same inquiry, which we would argue is the Metechi inquiry. All right, thank you, counsel. Rebuttal, one minute. Thank you, your honors, for the minute. Just to touch on the question of whether this lawsuit's parasitic to Bell, Sam Jones filed before Bell. So if anything, it's the other way around and that's why a share was paid. To respond to the last argument about whether or not Cedars-Sinai just allowed these things to happen as a profit center, not only that, we allege that they knew about the Stark certifications and they knowingly violated those Stark certifications. There's some bare allegations along those lines, but opposing counsel's response is that you haven't met the 9B standard to really show allegations of fraud against the hospital and I tend to agree. What's your best shot? We have specific allegations about exactly who at the hospital, what they did and when they did it and how they allowed this compensation scheme to go forward because they knew that they would make money off of it and they falsely certified compliance with Stark and AKS. Those allegations are extremely detailed and there were a lot more facts in that complaint than anything that was publicly disclosed and that would survive Rule 9B and it does. I see I'm not reaching it, but the complaint has a lot of details. We spent a lot of time making sure we met every aspect of it. Just to be clear, which complaint are you talking about? The second amended complaint? Yeah, the second amended complaint. The third amended complaint is only amended with respect to the original source and the pre-filing disclosures. I read the second amended complaint, so thank you. All right, thank you, counsel. Thank you to all counsel for your helpful arguments on this case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE